UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-81479-Cannon/McCabe

JANITA MATHIS,

    Plaintiff,

v.

CLASSICA CRUISE OPERATOR LTD. INC.,

    Defendant.
_____/

**REPORT & RECOMMENDATION**

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss ("Motion") (DE 13), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 21). The Court held a hearing on the Motion on March 29, 2024 (DE 25). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **DENIED**.

**I.     BACKGROUND**

This is a maritime negligence case brought by a cruise-ship passenger (Plaintiff) against a cruise ship operator (Defendant) following a slip and fall aboard a cruise ship. The Court accepts the following facts as true, taken from Plaintiff's Amended Complaint (DE 11). On or about April 23, 2023, Plaintiff embarked on a two-night cruise to the Bahamas aboard Defendant's cruise ship, the Margaritaville at Sea Paradise (DE 11 ¶¶ 7, 25, 44, 62). On the first night of the cruise, Plaintiff used her cabin bathroom shower, consisting of a small basin large enough for only one person to stand in, with a shower curtain encircling the basin (DE 11 ¶¶ 9-10, 27-28, 46-47, 64-65). Plaintiff was the first person to take a shower in the cabin that day (DE 11 ¶¶ 9, 46).

As Plaintiff showered, she noticed the water was not draining properly and was rising around her feet (DE 11 ¶¶ 11, 29, 48, 66). When Plaintiff finished her shower, she parted the

shower curtain and stepped out of the basin onto the bathroom floor (DE 11 ¶¶ 12, 30, 49, 67). As she stepped onto the floor, Plaintiff's foot slipped, and she fell hard to the floor (DE 11 ¶¶ 13, 31, 50, 68). As she lay there, she noticed the floor had become wet with soapy shower water which had overflowed from the shower basin, making the surrounding floor extremely slippery (DE 11 ¶¶ 14, 32, 51, 69). The fall caused numerous injuries, including a fractured ankle, torn ligaments and tendons, a torn rotator cuff, and injuries to the intervertebral discs in the cervical spine and lumbar spine (DE 11 ¶¶ 18, 37, 55, 73).

Based on the above, Plaintiff brings the following claims against Defendant:

| | | |
|---|---|---|
| Count 1 | | Direct Liability for Defective Shower Drain/Slipping Hazard |
| Count 2 | | Direct Liability for Failure to Warn of Slipping Hazard |
| Count 3 | | Vicarious Liability for Negligence of Crewmember who Cleaned Cabin |
| Count 4 | | Vicarious Liability for Crewmembers who Failed to Warn |

(DE 11).

## II. DISCUSSION

By way of this Motion, Defendant seeks dismissal of all four counts pursuant to Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court will address the direct liability claims (Counts 1 and 2) followed by the vicarious liability claims (Counts 3 and 4).

### A. Counts 1 & 2 – Direct Liability

Counts 1 and 2 allege Defendant's direct liability for negligence in, respectively, the creation of the shower drainage problem and related slipping hazard and the failure to warn of that hazard (DE 11 ¶¶ 7-24, 25-43). To state a maritime negligence claim, a plaintiff must allege facts showing (1) the defendant had a duty to protect the plaintiff from an injury, (2) the defendant breached that duty, (3) the breach proximately caused the plaintiff's injury, and (4) the plaintiff suffered harm as a result. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). As to the scope of the duty owed, a cruise ship operator owes its passengers a duty to exercise "ordinary reasonable care under the circumstances." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (cleaned up). This requires – as a prerequisite to imposing liability – that the cruise ship operator "have actual or constructive notice of the risk-creating condition." *Id.*; *see also Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 n.3 (11th Cir. 1990) ("The purpose behind the … notice requirement is that the shipowner should not be made the insurers of passenger safety.") (cleaned up).

Defendant urges dismissal of Counts 1 and 2 because Plaintiff failed to plead facts to plausibly show Defendant's notice and/or constructive notice of the shower drainage problem and related slipping hazard (DE 13 at 3-10). The Court has reviewed the allegations of the Amended Complaint and finds them sufficient to survive dismissal. The Court has also reviewed, but finds distinguishable, the many cases cited by Defendant where district courts dismissed maritime negligence cases for lack of sufficient facts to support notice. These cases involved complaints

3

with thin, threadbare, or conclusory allegations, mostly concerning notice of one-time slipping hazards such as a spilled drink or the like.[1] In such cases, courts must determine whether a plaintiff alleged sufficient facts to show actual knowledge of the hazard or that the hazard existed for a "sufficient period of time" to amount to constructive notice. *See Newbauer*, 26 F.4th at 935 (noting that a plaintiff "can establish constructive notice with evidence that the defective condition existed for a sufficient period of time to invite corrective measures") (cleaned up).

This case, in contrast, involves a non-isolated, broader hazard, namely improper shower drainage aboard the ship. According to the Amended Complaint, as Plaintiff showered, she noticed the shower basin was not draining properly, causing water to rise around her feet (DE 11 ¶¶ 11, 29). Plaintiff alleges that, prior to the cruise, an unknown crewmember was required to clean Plaintiff's cabin, which included running the water in the shower to clean the shower basin (DE 11 ¶¶ 19, 38). The unknown crewmember would have known that the water was not draining properly, creating a hazard (DE 11 ¶¶ 19, 38).

Plaintiff further alleges that, following the accident, Plaintiff and her husband spoke to other passengers on the ship who told them the showers in their cabins were not draining properly either (DE 11 ¶¶ 19, 38). Moreover, shortly after Plaintiff's cruise, Plaintiff's cousin went on a cruise aboard the same ship (DE 11 ¶¶ 19, 38). During the cousin's cruise, one of the crewmembers

---

[1] *Newbauer v. Carnival Corp.*, 26 F.4th 931, 933 (11th Cir. 2022) (wet, slippery transitory substance at the cruise ship's bar); *Holland v. Carnival Corp.*, 50 F.4th 1088, 1091 (11th Cir. 2022) (wet or slippery transient substance on a glass staircase); *Pizzino v. NCL (Bahamas) Ltd.*, 709 F. App'x 563, 564 (11th Cir. 2017) (spilled liquid in corridor); *Keefe*, 867 F.2d at 1320 (wet spot on dance floor); *Bustamante v. Celebrity Cruises, Ltd.*, No. 22-20330, 2022 WL 16727079, at *1 (S.D. Fla. Nov. 2, 2022) (sandy path during on-shore excursion); *Donaldson v. Carnival Corp.*, No. 20-cv-23258, 2020 WL 6801883, at *1 (S.D. Fla. Nov. 19, 2020) (wet, slippery steps); *Bujarski v. NCL (Bahamas) LTD.*, 209 F.Supp.3d 1248, 1249 (S.D. Fla. 2016) (puddle of water on dance floor); *Lopez-Zayas v. Carnival Cruise Lines, Inc.*, No. 1:15-cv-20681-RNS, at DE 13 at 1 (S.D. Fla. Jul. 16, 2015) (faulty lounge chair).

admitted to the cousin that water drainage was a "constant problem on that ship" (DE 11 ¶¶ 19, 38).

In the Court's view, these allegations, accepted as true, lead to the logical conclusion that the faulty shower drainage was not isolated to Plaintiff's cabin but, rather, existed as a non-isolated, broader problem creating a slipping hazard aboard the ship. The Court finds these allegations sufficient to support the pleading requirements of notice and/or constructive notice. As such, the Motion should be denied as to Counts 1 and 2.

  **B.**  **Counts 3 & 4 – Vicarious Liability**

Defendant next seeks dismissal of Counts 3 and 4, which allege vicarious liability for the negligence of Defendant's employees in, respectively, the failure to eliminate the shower drainage problem and related slipping hazard and the failure to warn of that hazard (DE 11 ¶¶ 44-61, 62-80). Plaintiff bases Count 3 upon the conduct of the "crewmember who cleaned Plaintiff's cabin" (DE 11 ¶ 56). According to Plaintiff, this crewmember negligently failed to make sure the shower was draining properly and/or negligently failed to report that it was not draining properly (DE 11 ¶¶ 56, 58). Plaintiff likewise bases Count 4 upon the conduct of the crewmember who cleaned Plaintiff's shower before she checked into the cabin (DE 11 ¶ 76). According to Plaintiff, this crewmember negligently failed to warn Plaintiff that the shower was not draining properly (DE 11 ¶¶ 76, 78).

Unlike claims alleging direct liability, claims alleging vicarious liability do not require proof of notice and/or constructive notice. *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1167 (11th Cir. 2021); *see also Swain v. Carnival Corp.*, No. 23-22973, 2024 WL 552196, at *3 (S.D. Fla. Feb. 12, 2024) (recognizing that the notice requirement "falls away" when a passenger proceeds under a theory of vicarious liability). Given the easier pleading and proof requirements

5

of vicarious liability claims, plaintiffs in maritime negligence cases commonly plead such claims in the alternative or in lieu of direct liability claims. *See Swain*, 2024 WL 552196, at *3 ("While it certainly may be true, as Carnival surmises, that [plaintiff] hopes to avoid having to establish notice by pleading a vicarious-liability claim, that goal alone does not render his claim defective.").

Defendant urges dismissal of Counts 3 and 4 here pursuant to the Eleventh Circuit's opinion in *Yusko*, which considered the substantive distinction between direct and vicarious liability claims in maritime negligence cases (DE 13 at 10-13). Defendant argues that, as per *Yusko*, the types of claims brought by way of Counts 3 and 4 – alleging negligent maintenance of the premises aboard a cruise ship – cannot be brought under a vicarious liability theory and can only proceed by way of a direct liability theory (DE 13 at 10-13). As set forth below, the Court disagrees.

In *Yusko*, a plaintiff passenger sustained injuries while dancing with a cruise ship employee during a dance competition onboard the ship. 4 F.4th at 1166. The plaintiff brought a vicarious liability claim, seeking to hold the cruise ship operator vicariously liable for the employee's negligence in causing the injuries. *Id.* The district court granted summary judgment in favor of the cruise ship operator, reasoning that it lacked notice of the risk-creating condition that caused the injury, i.e., the employee's negligent dancing. *Id.*

The Eleventh Circuit reversed. *Id.* In doing so, the court drew a distinction between direct liability claims (which require proof of notice and/or constructive notice) and vicarious liability claims (which do not). *Id.* The court reasoned:

> Our precedent assumes – and today we expressly hold – that when a passenger makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability, the passenger need not establish that the shipowner had actual or constructive notice of a risk-creating condition.

*Id*. Finding notice irrelevant to claims of vicarious liability, the Eleventh Circuit reversed the district court's summary judgment. *Id.*

More to the point here, in reaching its decision, the Eleventh Circuit analyzed the substantive distinction between claims of vicarious liability and direct liability. *Id.* at 1168-69. Citing to common law notions of agency, the court recognized that vicarious liability claims seek to hold a principal/employer liable "for its employee's torts if committed during the scope of the employment." *Id.* at 1168 (citing Restatement (Third) of Agency § 7.07 (2006)). Direct liability claims, in contrast, seek to hold a principal liable for its own torts. *Id.* Though not cited in *Yusko*, the Restatement (Third) of Agency § 7.03 (2006) recognizes that, as a practical matter, an "organizational principal" can take action "only through its agents, who typically are individuals" and that "[a]n organization's tortious conduct consists of conduct by agents of the organization that is attributable to it." As such, an organization can be sued for a breach of a duty of care "even though the breach cannot be attributed to any single agent of the organization." *Id.*

The *Yusko* court noted that plaintiffs, as the "masters" of their own complaints, remain free to bring direct claims, vicarious claims, or both, depending upon how the facts lend themselves to each type of claim. *Yusko*, 4 F.4th at 1170. The court noted the following examples of vicarious liability claims, that is, claims based on negligence attributed to specific agent(s) of the principal: (1) a case based on the medical negligence of a ship's onboard nurse or doctor, *see Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014), (2) a case based on a crewmember's assault of a passenger, *see Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891 (11th Cir. 2004), and (3) a case based on a crewmember's negligent dancing, resulting in injury to a passenger, *see Yusko*, 4 F.4th at 1164.

In each of these instances, an identifiable[2] agent committed a tort through some affirmative act, thereby giving rise to a claim of vicarious liability against the principal. Other courts have likewise recognized viable claims of vicarious liability based on the conduct of specific agent(s) of the principal. *See Hunter v. Carnival Corp.*, 609 F.Supp.3d 1305, 1309-12 (S.D. Fla. 2022) (finding viable vicarious liability claim based on cruise ship employee's failure to secure bunk bed ladder that caused injury to plaintiff); *Swain*, 2024 WL 552196, at *2-3 (finding viable vicarious liability claim based on cruise ship security guard's failure to intervene to prevent four passengers from severely beating a fifth passenger).

In a direct liability case, in contrast, the plaintiff alleges a tort based on conduct of the principal itself. As to organizational principals, which can only take action through agents, such claims might involve the conduct of multiple individual agents of the principal, not identifiable to the plaintiff at the outset of the case. The *Yusko* court identified several representative examples of such cases, including: (1) a case based on the organization's failure to provide sufficient security to prevent a sexual assault by a fellow passenger, *see K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041 (11th Cir. 2019); (2) a case based on the organization's failure to warn passengers about gang activity in a dangerous port-of-call, *see Chaparro*, 693 F.3d 1333; and (3) a case based on the organization's negligent creation and/or maintenance of a raised metal fire door threshold, which allegedly created a tripping hazard, *see Everett*, 912 F.2d 1355.

---

[2] A complaint in a vicarious liability case need not identify the negligent agent by name, so long as it identifies the agent by other means such as job duties or actions committed by the agent. *See Mclean v. Carnival Corp.*, No. 22-23187-CIV, 2023 WL 372061, at *1 (S.D. Fla. Jan. 24, 2023) ("While the Plaintiff does not specifically name the crewmembers, there is no requirement in the law that she do so, and it would seem fundamentally unfair to require the Plaintiff to remember the names of each of the crewmembers involved in the incident simply to file a complaint.").

In this case, Plaintiff seems to allege Counts 3 and 4 as alternative claims to Counts 1 and 2. That is, Counts 1 and 2 describe a slipping hazard based upon a ship-wide drainage problem (DE 11 ¶¶ 19, 38), which seems to present a classic case of direct liability against an organizational principal, with the fault attributed to multiple agents of the principal not identifiable to the plaintiff at the outset of the case. Counts 3 and 4, in contrast, do not incorporate or re-allege or any of the preceding allegations of a ship-wide problem. Instead, these counts assume a one-time drainage problem in Plaintiff's cabin with the fault attributed to the crewmember(s) who "negligently failed to make certain that the shower was draining properly" and/or "negligently failed to report that it was not draining properly" and/or "negligently failed to warn the Plaintiff that the shower was not draining properly" (DE 11 ¶¶ 56, 76).

Accepting the ship-wide allegations of Counts 1 and 2 as true, the Court questions how the crewmember(s) in Counts 3 and 4 could be responsible for the drainage problem in Plaintiff's cabin or how such crewmembers(s) could have solved that problem. Nevertheless, the Federal Rules of Civil Procedure allow plaintiffs to plead alternative and even inconsistent theories of recovery. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014) ("It is a well-settled rule of federal procedure that plaintiffs may assert alternative and contradictory theories of liability.").

The Court has reviewed the allegations of Counts 3 and 4 and finds them sufficient to state plausible claims of negligence against Defendant based on a theory of vicarious liability for the acts of Defendant's agent(s). The Court has considered, but finds unpersuasive, Defendant's argument that *Yusko* announced a blanket rule that bans all vicarious liability claims related to

"maintaining dangerous premises" onboard cruise ships (DE 13 at 11-13). Defendant bases this argument on the following language from the *Yusko* opinion:

> A plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both. It may be true that, in some cases, it will easier for a passenger to proceed under a theory of vicarious liability than under one of direct liability. But common sense suggests that there will be just as many occasions where passengers are limited to a theory of direct liability. Sometimes, as in *Keefe*, a passenger will not be able to identify any specific employee whose negligence caused her injury. *In other cases, a passenger will seek to hold a shipowner liable for maintaining dangerous premises* (as in *Everett*), for failing to warn of dangerous conditions off-ship (as in *Chaparro*), or for negligence related to the actions of other passengers (as in *K.T.*). Accordingly, we are confident that the notice requirement will have a robust field of operation despite our decision not to extend it to vicarious liability.

4 F.4th at 1170 (emphasis added).

The Court does not interpret this language to impose the blanket ban that Defendant suggests. Rather, the language simply acknowledges that in many cases passengers will seek to hold the principal liable for maintaining dangerous premises, such as the raised metal fire threshold in *Everett*. The language does not foreclose the possibility that plaintiffs in other cases might hold the principal liable under a theory of vicarious liability based on the conduct of specific agents of the principal who were responsible for the tort. Indeed, the very same passage of *Yusko* instructs that "a plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both." *Id.*

The Court acknowledges the disagreement among judges in this district over the proper interpretation of *Yusko*.[3] In the Court's view, however, *Yusko* does not foreclose all plaintiffs in

---

[3] *Compare Britt v. Carnival Corp.*, 580 F.Supp.3d 1211, 1216 (S.D. Fla. 2021) (finding that "[u]nder *Yusko*, claims for negligent maintenance and failure to warn are limited to a theory of direct liability, which requires notice.") (cleaned up); *Navarro v. Carnival Corp.*, No. 19-21072, 2020 WL 7480861, at *2 (S.D. Fla. Dec. 18, 2020) ("A routine direct, premises liability claim [cannot] simply be recast as a vicarious liability claim to avoid having to plead and prove notice."), *with Coletti v. Carnival Corp.* No. 23-cv-23275, 2024 WL 580355, at *3 (S.D. Fla. Feb. 13, 2024)

all cases from seeking to hold a cruise ship operator vicariously liable for the negligence of its agents/employees in maintaining the premises. Whether this case presents an appropriate case for such liability should be reserved for later stages of the proceeding. In the meantime, the Motion should be denied as to Counts 3 and 4.

### III.  RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 13) be **DENIED.**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 29th day of March, 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE

---

("Moreover, the Court is unpersuaded by Defendant's contention that negligent maintenance, negligent failure to correct, and negligent failure to warn claims may only be alleged under a theory of direct liability[.]"); *Hunter*, 609 F. Supp. 3d at 1310 ("*Britt's* understanding of *Yusko* is too narrow.").

11